## MADISON O. PAGE v. WILLIAM R. McCURDY.[1]

January 6, 1922.

No. 22,516.

**Partition—defense not proved.**

Plaintiff and defendant had title to a tract of land as equal co-owners. Plaintiff brought an action for partition. Defendant answered, alleging that plaintiff had falsely represented to him when they purchased the land that he had contributed half of the purchase price, though in fact defendant had unwittingly paid it all, and asked that he be decreed the sole owner of the land. The evidence was not such as to require the trial court to find that defendant's claim had been established.

Action in the district court for Traverse county for partition and sale of land. The facts are in the opinion. The case was tried befor Flaherty, J., who made findings and ordered judgment in favor of plaintiff. From an order denying his motion for a new trial, defendant McCurdy appealed. Affirmed.

*Canfield & Michael*, for appellant.

*C. H. Christopherson*, for respondent.

[1]Reported in 186 N. W. 134.

LEES, C.

In May, 1913, Robert Pautsch, formerly a resident of Rock county in this state, held a contract for deed from Ole O. Haga, covering a half section of land in Traverse county, and had an interest in a stock of hardware in Indiana. Thirteen thousand six hundred sixty-eight and 91/100 dollars was owing on the contract and Pautsch was having difficulty in making the payments which were due. Haga wanted the amount due reduced to $10,000. Plaintiff was a banker at Beaver Creek in Rock county and defendant a farmer living near Beaver Creek. Pautsch met plaintiff on a train and, in the course of a conversation with him, informed him that he wanted to dispose of the stock of hardware and sell the Traverse county land, and that the price he asked for the land was $55 an acre, or $17,600. The difference between the price asked and the amount he owed Haga represented the value he placed on his interest in the land. Plaintiff told Pautsch he had no money to invest, but had a house and lot in Minneapolis, mortgaged for $3,375, which he might trade for the land. On his return to Beaver Creek plaintiff had at least two meetings with defendant at which the purchase of the Traverse county land was discussed.

Defendant testified in substance that plaintiff told him he could get a piece of land in Traverse county at $55 an acre; that he had looked it over with Pautsch, who owned it; that it was good farming land and worth the price asked; that if he took it he was going to turn in a house and lot in Minneapolis which he had showed to Pautsch and which was worth $7,500, and asked defendant to go in with him, each to take a half interest in the land. He further testified that he agreed to do so on the strength of plaintiff's assurance that the investment was a good one, and subsequently paid $3,775.30 as his part of the purchase price, the money going to Haga and reducing the amount due on the contract to $10,000. He had known and dealt with plaintiff for many years and trusted him and relied on his judgment as an experienced business man. He admitted that in the summer of 1919 he listed the land with a real estate dealer at $90 an acre and asked plaintiff $75 an acre for it.

He called witnesses familiar with the land, who testified that its market value in the spring of 1913 was between $35 and $45 an acre. Plaintiff called a witness who placed the value at that time at $60 an acre, and he himself testified that it was worth that much. He gave his version of the transaction he had with defendant and produced a contract he made with Pautsch, testifying that he showed and read it to defendant. The contract contained a statement that it was subject to defendant's approval. It provided that Pautsch should take the Minneapolis property at $10,000, but subject to a mortgage of $3,375, which reduced the value of plaintiff's interest to $6,625. It also provided for an assignment of Pautsch's interest in the Haga contract and a transfer of his interest in the hardware stock. This contract was subsequently carried out, and in the transaction plaintiff obtained a note from Pautsch for $712, which he collected. When defendant made his payment to Haga the latter executed a new contract running to plaintiff and defendant. Subsequently each of them paid him $1,000 and received a deed of the land and gave back a mortgage for $8,000.

It appeared that defendant visited the land for the first time in 1914. He found it low and wet, but apparently expressed no dissatisfaction to plaintiff until the summer of 1919, when he asked him to take it off his hands on the basis of $75 an acre. Defendant visited the land several times after 1914. Some rents were received from it, which the parties divided, and they made some improvements and paid the taxes and divided these expenses. Nothing was ever realized from the stock of hardware. It is conceded that defendant never saw the Minneapolis property and knew nothing of its value except as plaintiff stated it to him. Incidentally it appeared that defendant was an experienced and successful farmer, as well as a stockholder and director in plaintiff's bank.

This action was brought for a partition and sale of the land. Defendant answered, claiming title to the whole tract on the ground that plaintiff had been guilty of fraud in the transactions above set out. In substance it was his claim that plaintiff had agreed to contribute "dollar for dollar" with him in paying for the land, but had invested nothing; that, although he represented his Minneapolis

property to be worth $7,500, it was worth no more than the amount of the mortgage against it, and that in truth and in fact the entire purchase price of the land had been paid by defendant. At the trial defendant produced a witness familiar with the Minneapolis property, who testified that in 1913 it was worth not to exceed $3,000. On the other hand, plaintiff testified he had traded a section of Montana land for it and that the land was worth from $10 to $12.50 an acre. He admitted that he had represented to defendant that the Minneapolis property was worth $7,500, and testified that in fact it was of that value, though in the trade with Pautsch its value was inflated to $10,000. He explained that this was done to offset the fictitious value which Pautsch placed on his interest in the stock of hardware, which plaintiff regarded as of no value whatever. The findings were in plaintiff's favor and a sale in partition of the land was directed, the proceeds to be divided equally between the parties. Defendant appeals from an order denying his motion for a new trial.

1. Defendant was justified in relying on plaintiff throughout the transaction and the latter was bound to act with the utmost good faith towards his associate in their joint venture. Defendant's counsel earnestly urge that the evidence conclusively shows that plaintiff did not so act. One element of the alleged fraud consisted in the representation that the Minneapolis property was worth $7,-500. If the representation was true, plaintiff made a substantial contribution to the payment of the purchase price of the Traverse county land. If it was unqualifiedly false, he paid nothing for what he got. There was a sharp conflict in the evidence relating to the value of the property. Evidently the court believed plaintiff's testimony, and hence did not find that there was any misrepresentation in this respect.

2. Another element of the alleged fraud was the overvaluation of the Traverse county land. Here again there was a conflict in the evidence. If plaintiff is to be believed, it was his honest opinion when the land was purchased that it was worth at least $55 an acre. There was testimony which would sustain a finding that it was actually of that value. Probably its actual value was not material,

for, if plaintiff believed it was worth $55 an acre, his statement to defendant that he considered the investment a good one could not be regarded as a misrepresentation.

3. The claim that defendant paid the whole of the original purchase price of the land cannot be sustained, for the reason stated in the first subdivision of this opinion. There is an additional reason leading to the same conclusion. Defendant's money went to Haga to reduce the amount due him on his contract with Pautsch. Plaintiff's property went to Pautsch to pay him what he asked for his equity in the land. Pautsch might set his own price on it. It was necessary to acquire his interest and to satisfy Haga as well, if the land was purchased. Pautsch was paid by the transfer to him of plaintiff's property. Defendant contributed nothing to the consideration Pautsch received for the sale of his interest, and plaintiff contributed nothing towards the payment made by defendant to Haga. Afterwards a balance was struck and the difference in the amounts contributed by the parties respectively was adjusted.

A careful examination of all the evidence has satisfied us that it would amply support a finding in plaintiff's favor on all phases of the case. It follows that the order denying a new trial must be affirmed.